THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |

## NOTICE OF FILING

TO:   SEE ATTACHED SERVICE LIST

**PLEASE TAKE NOTICE** that on the 15th day of December, 2004, the Debtors caused to be filed with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division at 219 S. Dearborn St., Chicago, Illinois 60603, **Debtors' Reply in Support of Motion to Dismiss [Docket No. 9028]** a copy of which is attached hereto.

PLEASE TAKE FURTHER NOTICE that you may obtain further information concerning these Chapter 11 cases:

- At the website of the United States Bankruptcy Court, Northern District of Illinois at www.ilnb.uscourts.gov (home page); or

- At the Debtors' private web site at www.pd-ual.com.

Dated: Chicago, Illinois
December 15, 2004

Respectfully submitted,

/s/ 

James H.M. Sprayregen, P.C. (ARDC No. 6190206)
Marc Kieselstein, Esq. (ARDC No. 6199255)
David A. Agay, Esq. (ARDC No. 6244314)
Marc J. Carmel, Esq. (ARDC No. 6272032)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)
Counsel for the Debtors and Debtors In Possession

K&E 10058131.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| UAL CORPORATION, et al., | ) Case No. 02-B-48191 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Honorable Eugene R. Wedoff |
| | ) |
| | ) Hearing Date: December 17, 2004 |
| | ) Hearing Time: 9:30 a.m., Chicago time |

**DEBTORS' REPLY IN SUPPORT OF MOTION TO DISMISS [DOCKET NO. 9028][1]**

The above-captioned debtors and debtors in possession (the "Debtors") filed their motion (the "Motion to Dismiss") to dismiss two discrete claims in the Trustees' Amended Motion for: (a) "maintenance burn" under Bankruptcy Code §§ 363(e) and 503(b)(1)(A); and (b) breaches of the Rejected Leases' return conditions under Bankruptcy Code § 365(d)(10).

The Trustees' response to the Motion to Dismiss (the "Response") zigs and zags and ultimately fails to focus on the issues at hand. Cutting through the noise, the Trustees fail to cite a single case of a court awarding adequate protection retroactively for: (i) "use value" of property; (ii) periods subsequent to expiration of the automatic stay; or (iii) periods where the debtor no longer actually possesses or uses such property. Also, the Trustees' do not point to any cases awarding damages under Code § 365(d)(10) for failure by a debtor to comply with return conditions in a personal property lease. For these and other reasons discussed below and in the Motion to Dismiss, the Court should dismiss the Trustees' legally deficient arguments.[2]

---

[1] Unless otherwise defined herein or the context clearly requires otherwise, capitalized terms in this motion shall have the meanings ascribed in the Motion to Dismiss. (Docket No. 9028)

[2] The Trustees urge the Court not to direct that Fed. R. Civ. P. 12(b)(6) apply, because the Motion to Dismiss is untimely. While the timing and procedural posture of the Debtors' Motion to Dismiss differs from a typical
(Continued...)

I.   **"MAINTENANCE BURN"**

    A.   **The Trustees cannot obtain adequate protection for "use value" of property during a bankruptcy case**

The Trustees' explanation of "maintenance burn" suffers from contradictions and confusion. If by "maintenance burn" the Trustees mean "ordinary wear and tear," the explicit terms of the Rejected Leases preclude any such recovery. (Amended Motion ¶¶ 10, 25)[3] If the Trustees seek recovery for the value of "possession" and "use" of the aircraft during the Chapter 11 Cases (Amended Motion ¶¶ 29, 32), *e.g.*, the aircraft could have been re-marketed and re-deployed for a more efficient use or better return, the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (holding that creditors could not receive adequate protection for "use value" of collateral) forecloses any recovery.

In their Response, to fit under the *Timbers of Inwood* decision, the Trustees' now say "maintenance burn" is "a measure of diminution in property value." (Response ¶ 15 n. 2) Thus, rather than "assum[ing] the truth of all factual allegations" in the Amended Motion, as

---

12(b)(6) motion, Rule 9014 nonetheless states the bankruptcy court can direct that Fed. R. Civ. P. 12(b)(6) shall apply "at any stage in a particular matter." Because of the legal deficiency of the Trustees' claims, the Debtors believe that a 12(b)(6) motion to dismiss constitutes the proper mechanism for disposing of such claims. If the Court views the Motion to Dismiss as procedurally improper, the Court should dispose of the Trustees' legally deficient claims by sustaining the Debtors' objection to the Amended Motion (which makes the same arguments contained in the Motion to Dismiss). Also, in arguing that granting the Motion to Dismiss would not serve to streamline the proceedings or reduce the scope of discovery, the Trustees ignore the fact that they still have not responded to any of Debtors' discovery requests. In addition, as of date hereof, the Debtors have no basis for believing that the parties will agree on the underlying facts relevant to the Trustees' claims. If, in fact, no dispute exists as to the underlying facts, as the Trustees assert, the time has come to address the legal sufficiency of the Trustees' claims.

[3]   The relevant provisions of the Rejected Leases (a sample of which is attached to the Amended Motion) state: "at the time of such return, such Airframe and Engines or Acceptable Alternate Engines . . . (iii) shall be in a regular passenger configuration used by Lessee, and in as good an operating condition as when delivered by Manufacturer to Lessee, <u>ordinary wear and tear excepted</u>." (Amended Motion, Exh. D, Sample Lease, Section 5, p. 27 (emphasis added); *see also* Amended Motion ¶¶ 10, 25)

2

they urge (*id.* at ¶ 5), the Trustees ask the Court to accept their self-serving *re*-characterization of "maintenance burn" set forth in the Response. The convoluted arguments of the Trustees merely serve to obfuscate the basic point: the Trustees' "maintenance burn" claim amounts to nothing more than an attempt to obtain "adequate protection" from the Trustees' voluntary decision not to exercise its remedies, despite expiration of the automatic stay, and allow the Debtors' continued use of the aircraft.[4]

### B. The Trustees cannot recover adequate protection where the automatic stay has expired and the Debtors no longer use or possess the Rejected Aircraft

The Trustees' next argument, that § 363(e) provides for adequate protection "at any time" irrespective of expiration of the automatic stay, misses the mark. By definition, the Trustees cannot obtain adequate protection after expiration of the automatic stay. *See, e.g., Grundy Nat. Bank v. Rife*, 876 F.2d 361, 365 (4th Cir. 1989) ("the secured creditor is entitled to relief from the automatic stay *or* to adequate protection") (emphasis added); *In re Wreccksham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) ("adequate protection is designed to

---

[4] According to the Trustees, "maintenance burn" arises in the ordinary course, independent of any termination or breach of the lease. By the Trustees' theory, it would be recoverable irrespective of the Debtors' bankruptcy and rejection of the leases. Yet, the Rejected Leases never mention "maintenance burn." Particularly in light of the detailed damage provisions of the Rejected Leases, a court likely would not allow recovery of such extra-contractual amounts outside of bankruptcy. *Cf. Timbers of Inwood*, 484 U.S. at 375 (rejecting a result that "renders § 362(d)(2) a practical nullity and a theoretical absurdity"). The Trustees appear to concede the difficulties with their "maintenance burn." (Response ¶ 19 ("the Rejected Leases do not include the costs of maintenance burn because, over long-term leveraged leases, the expectation is for debt holders to receive their full investment return . . . from the lease payments themselves")) If the operative documents do not provide for "maintenance burn," no question of fact exists as to their "maintenance burn" claim: the Trustees cannot recover a claim in bankruptcy that they could not recover outside of bankruptcy. *See, e.g., Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946) ("what claim of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law"); *In re Earley*, 2004 WL 438494 (Bankr. N.D. Ill. March 5, 2004) ("'[b]asic federal rule is that state law governs substance of claim asserted in bankruptcy case'") (quoting *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)).

3

K&E 10053009.5

assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property while the automatic stay remains in effect").

In making their argument, the Trustees quote selectively from § 363(e), the second sentence of which explicitly excludes any leased personal property (*i.e.*, the Rejected Leases and Rejected Aircraft) not subject to the automatic stay. Accordingly, this Court has stated "that the question of adequate protection revolves around the need to compensate a secured creditor for diminution in the value of its security during the pendency of the automatic stay." *In re Fed. Nat'l Mortgage Ass'n*, 153 B.R. 204, 210 (N.D. Ill. 1993) (district court affirming bankruptcy court's holding and reasoning).[5]

The bankruptcy court's decision in *In re Continental Airlines*, 154 B.R. 176 (Bankr. D. Del. 1993) is not to the contrary. The Trustees seek to distinguish *Continental Airlines* on the basis that the bankruptcy court dealt only with adequate protection in the context of Code § 362(d)(1), not § 363(e), as pled by the Trustees. The Trustees further argue that certain statements by the bankruptcy court actually support their contention that the automatic stay "need not be in effect" to seek adequate protection under § 363(e). The Trustees have selectively read from the bankruptcy court's opinion. The bankruptcy court in *Continental Airlines* stated that a creditor may seek adequate protection under Code § 363(e) due to the debtor's "use, sale, or lease" of property. 154 B.R. at 180. Considered together with the bankruptcy court's finding that a creditor cannot receive adequate protection retroactively, *id.*,

---

[5] The Trustees attempt to distinguish *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), cited in Motion to Dismiss. In *Whiting Pools*, the bankruptcy court determined that the automatic stay required the IRS to turnover property seized prepetition. 462 U.S. at 201. The bankruptcy court further linked the debtor's adequate protection payments to maintenance of the automatic stay as to the IRS. *Id.* at 201 n. 7. In affirming the appellate court's affirmance of the bankruptcy court's decision, the Supreme Court posited § 363(e) as protecting a secured creditor while the automatic stay prevented repossession of collateral. *Id.* at 203-04. Absent the automatic stay, the Supreme Court's reasoning bars resort to adequate protection.

4

the bankruptcy court's statement only can mean that a creditor no longer may seek adequate protection where, as here, the debtor no longer uses or possesses the property at issue.

### C. The Trustees have no grounds for maintenance burn under § 503(b)(1)

In their Amended Motion and Response, the Trustees devote two conclusory sentences to their administrative claim theory of "maintenance burn." (*See* Amended Motion ¶ 33, Response ¶ 16) It is well established that "'conclusory statements of law . . . and their unwarranted inferences are not sufficient to defeat a motion to dismiss for failure to state a claim.'" *Local Union 15, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Exelon Corp.*, 191 F. Supp. 2d 987, 992 (N.D. Ill. 2001) (quoting *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995)). "The court must decide whether the [claimant] has alleged enough facts that would establish [its claim]." *Id.* Concurrently, "[a]dministrative expense claims should be narrowly construed in order to keep administrative expense at a minimum and thus preserve the estate for the benefit of all creditors." *In re Dement & Dougherty, Inc.*, 227 B.R. 508, 513 (Bankr. N.D. Ill. 1998).

In any event, it is well established § 503 is not "an alternative remedy to adequate protection." *In re Williams*, 246 B.R. 591, 595-96 (8th Cir. B.A.P. 1999) ("[a] prepetition secured creditor's remedy for use and depreciation of its collateral during the bankruptcy is through a request for adequate protection, not an administrative expense") (collecting cases). Moreover, the Rejected Leases are prepetition contracts and not the result of transactions with the debtors in possession. The Trustees' were not "induced" to deal with the Debtors during the first 60 days of the Chapter 11 Case when the automatic stay protected the Debtors' use of the Rejected Aircraft. *See* 11 U.S.C. § 1110(a); *see also In re Jartran*, 732 F.2d 584, 587 (7th Cir. 1984) ("inducement of the creditor's performance *by the debtor-in-possession* is crucial to a

5

claim for administrative priority"); *Williams*, 246 B.R. at 595-96. Post-expiration of the automatic stay, the terms of the Debtors' use of the Rejected Aircraft were governed by the Interim Adequate Protection Stipulations (the "Adequate Protection Stipulations") and, according to the Trustees, the Rejected Leases.

The Adequate Protection Stipulations, in particular, contained quite detailed provisions pertaining to the Trustees' compensation for the Debtors' use and possession of the Rejected Aircraft prior to rejection. Yet, despite the Trustees' assertion that "maintenance burn" is "inherent and measurable" over time (Amended Motion ¶ 30), neither the Adequate Protection Stipulations nor the Leases contain any reference to "maintenance burn." (*See* Response ¶ 19 ("the Rejected Lease rents do not include the costs of maintenance burn") (emphasis in original)) Indeed, as suggested by the title, the Interim *Adequate Protection* Stipulations would have been the logical instrument to set forth such a "maintenance burn" claim.[6]

### D. The Trustees are not entitled to retroactive adequate protection claims

The first sentence of § 363(e) couches adequate protection as a forward-looking remedy. Words such as "prohibit" or "condition" a debtor's "use, sale, or lease" contemplate conditioning a debtor's ongoing use of property rather than providing a remedy for past use. The Trustees appear to concede that as a legal matter, they cannot seek adequate protection retroactively. *See, e.g., Agency Servs., Inc. v. Keck, Mahin & Cate*, 1999 WL 199595 (N.D. Ill. March 31, 1999); *In re Walter*, 199 B.R. 390, 393 (Bankr. C.D. Ill. 1996) ("a request for

---

[6] In deciding the Motion to Dismiss, it is entirely appropriate for the Court to consider the terms of Adequate Protection Stipulations, which have been filed and docketed, and the Rejected Leases, a sample of which the Trustees attached to the Amended Motion. *See U.S. v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991).

K&E 10053009.5

adequate protection must be made prospectively") (citing *Best Products*, 138 B.R. 155); *Continental Airlines*, 154 B.R. at 180.

Nonetheless, according to the Trustees, the Debtors executed a stipulation for the withdrawal of U.S. Bank's January 2, 2003 adequate protection motion (Docket No. 735) which deems the Trustees' "maintenance burn" claim as filed on January 2, 2003. According to the Trustees, this stipulation allows them to assert their claim retroactively. (Response ¶ 14) While the Trustees have not provided a copy of the stipulation, a review of the transcript from the July 18, 2003 omnibus hearing does indicate that counsel stated that U.S. Bank was withdrawing the adequate protection motion without prejudice with the right, upon re-filing, to have the motion deemed as filed on January 2, 2003. (7/18/2003 Hr'g Tr. p. 37) Of course, the January 2, 2003 motion nowhere sets forth a claim for "maintenance burn,"[7] and even if the Debtors stipulated that the Trustees could assert a retroactive adequate protection claim, their claim would be for the period between January 2 and February 7, 2003, when the automatic stay lifted as to the non-1110(a) aircraft, or the date of rejection as to the 1110(a) aircraft, and should be limited to the grounds stated in the original motion.

E. **The Debtors never waived their opposition or stipulated to the Trustees' recovery of maintenance burn, retroactively or otherwise**

In their Response, the Trustees assert that by virtue of the Adequate Protection Stipulations the Debtors waived their right to contest the Trustees' "maintenance burn" claims on any grounds. (*See* Response ¶¶ 7 and 12) The Trustees point to certain recitals in the Adequate

---

[7] While U.S. Bank's January 2, 2003 motion seeks, *inter alia*, "reserves" for maintenance and overhaul of aircraft parts, the motion never mentions "maintenance burn." (Docket No. 735 ¶ 10)

7

K&E 10053009.5

Protection Stipulations regarding the Trustees "right" to "adequate protection." (Response ¶ 7 (citing Stipulation ¶ 4)) At the same time, however, the Trustees direct the Court to the payment scheme set forth in the Adequate Protection Stipulations *as* their adequate protection. (Response ¶ 12 (citing Stipulation ¶ 7)) Although the Adequate Protection Stipulations enumerate a detailed schedule of "Adequate Protection Payments " (Stipulation ¶ 7, Exh. D), there is no hint in the Adequate Protection Stipulations of "maintenance burn."

It is obvious from the foregoing that the Adequate Protection Stipulations are just that: voluntary agreements to provide a stream of payments and other protections to the Trustees in exchange for, *inter alia*, forbearance from exercising remedies. In asserting that the Debtors have somehow pre-approved the "maintenance burn" claim, the Trustees effectively seek to re-negotiate and re-write the Stipulations to allot themselves additional claims under any theory and in any amount.

It is true that the Trustees reserved their rights in the Stipulation to assert additional adequate protection claims. The reservation of a right, however, does not translate into a waiver by the Debtors of any defenses or a final determination of the legal validity of any rights, claims, or interest. *See, e.g., In re Midway Airlines,*, 383 F.3d 663, 671 (7th Cir. 2004) ("waiver is an intentional relinquishment of a known right"). Likewise, a rights reservation does not endow a legally insufficient claim with the badge of legitimacy, a distinction that the Trustees continually fail to grasp. In any event, the Debtors reserved their rights and defenses to any future claims by the Trustees. (*See* Stipulation ¶ 12 ("this Stipulation does not otherwise

8

limit, waiver, modify or affect . . . any rights, remedies, or claims of the Aircraft Creditors, if any, or United, if any, under other provisions of the Bankruptcy Code"))[8]

## II.  RETURN CONDITIONS

Following a familiar pattern, the Trustees have changed their position on return conditions. Concerned that their assertion that "return conditions arose simultaneously with the rejection of the leases" is legally insufficient (Amended Motion ¶ 24), the Trustees have further advanced in time the point at which the return condition claim allegedly accrued to before rejection. (Response ¶ 22) The Trustees thus appear to concede that a return conditions claim under § 365(d)(10) must arise prior to rejection.

### A.  Return conditions under the Rejected Leases accrue after rejection

In their Amended Motion, the Trustees rely on Section 5 of the Rejected Leases. In each instance, Section 5 of the Rejected Leases imposes conditions on the lessee "[a]t the time of such return" of the Rejected Aircraft. (Amended Motion, Exh. D, Sample Lease, Section 5, pp. 27-28)  Because such return cannot (and did not) occur until *after* rejection of the Rejected Leases, which the Trustees do not dispute, the return conditions under Section 5 of the Rejected Leases accrue outside the pre-rejection period covered by § 365(d)(10), as a matter of law. The Trustees attempt to get around the explicit language of Section 5 by arguing that the Debtors must comply with certain requirements in anticipation of returning the aircraft. They neglect to mention, however, the plain language of Section 5 of the Rejected Leases state that such

---

[8]  As a last resort, the Trustees argue that the Court should sustain their "maintenance burn" claim to allow the Trustees to make their case for rent at pre-petition rates under § 365(d)(10). Like other statements made by the Trustees, this one suffers from a fundamental disconnect. The Court's dismissal of such claim, while potentially probative, would not be dispositive of the validity of the Trustees' rent claim arguments. The Trustees concerns are therefore misplaced

9

K&E 10053009.5

obligations only arise upon return, which post-dates rejection. (Amended Motion, Exh. D, Sample Lease, Section 5, pp. 27-28) *See Thompson v. Amoco Oil Co.*, 903 F.3d 388, 397 (7th Cir. 1990) ("[w]e try not to interpret contracts in a manner that would render specific contractual language mere surplusage").

### B. The *TWA* decision does not require compliance with return conditions under § 365(d)(10)

The Trustees cite to the Third Circuit's decision in *In re Trans World Airlines, Inc. ("TWA")*, 145 F.3d 124 (3d Cir. 1998), for the proposition that "return condition claims are more like compensation for past use than future rent." (Response ¶ 23) While the Debtors dispute that characterization, the fact remains that the triggering event for the "return condition claim" under the Rejected Leases -- return of the aircraft -- presupposes return of the aircraft in bankruptcy through the vehicle of rejection, which, in turn, forecloses any recovery under § 365(d)(10). Furthermore, the Debtors respectfully submit that the *TWA* decision does not apply to this case.

In *TWA*, the debtor elected to perform under its aircraft lease pursuant to § 1110(a). *Id.* at 129. The Third Circuit considered whether, upon rejection of the lease, the lessor, *inter alia*, could recover administrative damages for failure to comply with return conditions in the lease. *Id.* at 136-42. Relying on the debtor's § 1110(a) election in *TWA*, the Third Circuit held the debtor liable for failure to comply with certain maintenance and return conditions in the aircraft lease. *Id.* at 137, 140, 141-42 ("cases in which the debtor did not enter into a § 1110 agreement do little to inform our analysis").[9]

---

[9] In its decision, the Third Circuit noted that Section 1110 does not displace a debtor's ability to assume or reject a lease under Section 365. *TWA*, 145 F.3d at 136. The Court also stated that absent assumption under Section
(Continued...)

10

K&E 10053009.5

Here, the Debtors' Motion to Dismiss addresses the non-1110(a) aircraft. Also, the Trustees rely on § 365(d)(10), not § 1110(a), for their return conditions claim. Unlike § 1110(a) at issue in *TWA*, § 365(d)(10) provides for performance of obligations only until rejection of the lease.[10]

### C. The Court should not sustain the Trustees' return condition claim under § 503(b)(1)(A)

Attempting to save their return conditions argument, the Trustees' in their Response add yet another theory to their quiver. The Trustees urge the Court to deem the Amended Motion as "amended" to include a claim for return conditions under § 503(b)(1)(A). (Response ¶ 26 n. 4). The Court should deny this request.

As a general rule in Fed. R. Civ. P. 12(b)(6) motions to dismiss, courts consider only the allegations raised in the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). "Additional allegations contained in a responsive brief are not considered to be incorporated in the complaint." *Guaranty Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 852 (N.D. Ill. 2004); *accord Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) ("consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs").

---

365 or a Section 1110(a) election, upon rejection of an aircraft lease under Section 365, the lessor can no longer hold the debtor liable for rent under the lease as an administrative liability. *Id.* at 136-37.

[10] As stated previously, the Debtors believe that *TWA* was wrongly decided to the extent it holds that a § 1110(a) election converts a return condition obligation into an administrative claim. That issue, however, is beyond the scope of the Motion to Dismiss and is for another day.

11

The Trustees attempt to amend their return conditions claim in the Response is a mischievous maneuver. The Trustees have given the Debtors almost no notice of the legal or factual basis of such claim. The Debtors should not be forced to address a return conditions claim under § 503(b)(1)(A) in this Reply. If the Court is inclined to allow the Trustees to assert such claim, at least the Debtors should have the opportunity to fully brief its legal sufficiency.

Moreover, the Trustees fail to articulate any of the required elements for such an administrative return conditions claim. The Trustees have not mentioned: any benefit to the bankruptcy estate, the operative transaction with the debtors in possession, or the "inducement" to transact business with the Debtors. *Jartran*, 536 F.2d at 954. Finally, the cases cited by the Trustees do not support their administrative return conditions claim.

In both *In re United Trucking Service, Inc.*, 851 F.2d 159, 160-61 (6th Cir. 1998) and *In re Atlantic Container Corp.*, 133 B.R. 980, 982-83 (Bankr. N.D. Ill. 1991), the courts considered whether personal and real property lessors, who sought recovery prior to rejection of the leases, could assert administrative claims for repair and maintenance costs. Both courts answered in the affirmative.[11] Unlike in *United Trucking* and *Atlantic Container*, the Trustees first raised the issue of administrative priority for their maintenance claims *after* rejection and return of the Rejected Aircraft (and following the Debtors' challenge to the legal sufficiency of their claims). Also, in *United Trucking* and *Atlantic Container*, the lessors detailed their

---

[11] In *Atlantic Container* the bankruptcy court pointed out that the lessor had a claim for repair and maintenance under the lease during the debtor's occupancy under Code § 365(d)(3), which requires the debtor to perform all obligations under a real property lease until assumption or rejection of the lease. 133 B.R. at 991; *see also* 11 U.S.C. § 365(d)(3). Notably, the bankruptcy further stated that "[u]nder § 365(d)(3), the trustee's obligation to perform the debtor's duties under an unexpired lease end when the lease is assumed or rejected." *Id.* at 991 n. 6. The language of § 365(d)(3) is quite similar to § 365(d)(10).

12

maintenance and repair claims. Here, the Trustees have not provided any notice of what maintenance or return conditions the Debtors have allegedly breached.

More importantly, both in *United Trucking* and *Atlantic Container*, the lessors based their administrative claims on "failure to maintain and repair" property. Contrary to the Trustees' statements, the courts in *United Trucking* and *Atlantic Container* never mentioned an award of administrative expenses for a debtor's post-rejection breach of return conditions. Rather, the Sixth Circuit and the bankruptcy court confined their analysis to the benefits received by the debtor "'during the interval between the filing of the debtor's petition and the rejection of the contract.'" *United Trucking*, 851 F.2d at 162 (quoting *Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir. 1960)). This distinction is critical. Here, there is no assertion that United failed to maintain the Rejected Aircraft in accordance with the Rejected Leases prior to the date of rejection.

Upon return, and depending on where the airframe and/or engines are in the normal maintenance cycle, return conditions in the Rejected Lease may require that United upgrade the Rejected Aircraft so as to "reset" the maintenance clock to a more favorable time, further removed from expensive overhauls. In fact, as to the non-1110(a) aircraft, because they could have repossessed the aircraft, the Trustees exercised certain control over the return condition of their aircraft once the automatic stay expired on February 7, 2003, and they could have selected a more favorable time in the maintenance cycle. In any event, in bankruptcy, § 365 excuses United compliance with the return conditions under the Rejected Leases and neither *United Trucking* nor *Atlantic Container* hold otherwise.

13

### III. CONCLUSION

For all of the foregoing reasons, along with those set forth in the Motion to Dismiss, the Court should dismiss the Trustees' "maintenance burn" and return conditions claims for non-1110(a) Rejection Aircraft.

Dated: December 15, 2004
       Chicago, Illinois

                                          **UAL CORPORATION, et al.**

                                          _____
                                          James H.M. Sprayregen, P.C. (ARDC No. 6190206)
                                          Marc Kieselstein, Esq. (ARDC No. 6199255)
                                          Joseph U. Schorer, Esq. (ARDC No. 3128758)
                                          David A. Agay, Esq. (ARDC No. 6244314)
                                          Kirkland & Ellis LLP
                                          200 East Randolph Drive
                                          Chicago, Illinois 60601
                                          (312) 861-2000 (phone)
                                          (312) 861-2200 (facsimile)

                                          Counsel for the Debtors and Debtors In Possession

K&E 10053009.5

## CERTIFICATE OF SERVICE

I, Jesse Aguilar, a non attorney, certify that on the 15th day of December, 2004, I caused to be served, by e-mail (to parties who have provided an e-mail address), facsimile (to parties who have not provided an e-mail address) and by overnight delivery (to all parties who have not provided an e-mail address or a facsimile number), a true and correct copy of the foregoing **Debtors' Reply in Support of Motion to Dismiss [Docket No. 9028],** on the parties on the attached service list.

Dated: December 15, 2004

_____
Jesse Aguilar

Subscribed and sworn to before me
this 15th day of December, 2004.

_____

"OFFICIAL SEAL"
Scott F. Walker
Notary Public, State of Illinois
My Commission Expires Jan. 24, 2008

C:\NrPortbl\LEGAL\JAGUILAR\10037773_1.DOC

# NOTICE REGARDING THE SERVICE LIST

Section C.6.i(1) of the Third Amended Notice, Case Management and Administrative Procedures provides that when a document is filed and served in <u>In re UAL Corporation, et al.</u> the service lists representing the recipients to whom such a filing is addressed are required to be <u>filed with the Court</u>, but they are not required to be <u>served</u> when serving the Certificate of Service on the recipients. Therefore, we have not attached the service lists to this Certificate of Service.

If you would like to view the current Core Group Service List, it is available at http://www.pd-ual.com/UALRestruct_CG.html, and is also contained in Section C.5.a of the Third Amended Notice, Case Management and Administrative Procedures.

If you would like to view the current 2002 Service List, it is available at http://www.pd-ual.com/UALRestruct_2002.html.

The above lists are provided for your convenience. Documents filed with the Court are available to be viewed and downloaded at the web site of the U.S. Bankruptcy Court for the Northern District of Illinois, http://www.ilnb.uscourts.gov/ ("Case Image Viewing").

The Third Amended Notice, Case Management and Administrative Procedures are available at the web site of the U.S. Bankruptcy Court for the Northern District of Illinois, http://www.ilnb.uscourts.gov/ ("Case Image Viewing"), or at the Debtors' private web site, http://www.pd-ual.com/UALRestruct_CMP.html.

If you have any questions about the 2002 Service List, please contact Josh Gad-Harf, (312) 861-7912, jgad_harf@kirkland.com.