IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: March 17, 2006 |
| | ) | Hearing Time: 9:30 a.m. |
| | ) | Response Deadline: March 8, 2006 |

**REORGANIZED DEBTORS' OBJECTION TO GFCC AMENDED AIRCRAFT AND
TAX INDEMNITY CLAIM NO. 44909**

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "United") hereby object to the Amended Aircraft and Tax Indemnity Claim No. 44909 (the "Amended TIA Claim") filed by General Foods Credit Corporation ("GFCC") on January 16, 2006, and respectfully represent:

**I.**

**INTRODUCTION**

GFCC has just filed the Amended TIA Claim in connection with six aircraft setting forth a liquidated claim in the amount of $96,206,880.22.[1] This Objection will show that the components of the formula adopted by United and challenged by GFCC in calculating the reduction of GFCC's grossly-inflated Amended TIA Claim are sound and reasonable. Most

---

[1] GFCC has also filed a claim against UAL Corporation as guarantor of the $96,206,880.22, which claim is not the subject of this Objection (United reserves all rights with respect thereto).

critically, United will demonstrate that GFCC has distorted the interpretation of the TIAs'[2] indemnity provisions by, among other things, failing to focus this Court's attention on a reading of the <u>entire indemnification clause,</u> attempting to recast the TIAs as guaranties of GFCC's entire economic investment in the form of its "Net Economic Return," and ignoring a controlling body of case law on compensatory damages that requires GFCC to reduce its indemnity claims by the future tax savings realized from foreclosure. This same body of case law -- which applies with equal force under both New York[3] and Illinois law -- precludes GFCC from claiming damages for taxes GFCC is not going to be required to pay (i.e., GFCC's demand that it be grossed up for taxes on an amount which GFCC is not going to include in its income). Further, GFCC, as an undersecured creditor, is not entitled to the post-petition attorneys' fees and expenses it asserts as part of the Amended TIA Claims (the "Attorneys' Fees Claims"). Accordingly, United hereby requests that the Amended TIA Claim be reduced to $16,649,636.51, based on the calculations set forth in Exhibit A hereto.

## II.

## BACKGROUND

On November 8, 2005, United filed its Omnibus Objection to Aircraft and Tax Indemnity Claims [Docket No. 13441] (the "TIA Objection") seeking the disallowance or reduction of eighty-eight TIA claims. The Reorganized Debtors have now successfully resolved all but seven of these claims, reducing TIA liability on the Claims Register from approximately $5.2 billion to $910 million. In fact, those holders of TIA claims subject to the TIA Objection

---

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Omnibus Objection to Aircraft and Tax Indemnity Claims [Docket No. 13441].

[3] The GFCC TIAs are governed by New York law.

10957750_2.DOC

who settled with the Reorganized Debtors prior to entry of the confirmation order on January 20, 2006 have already received their distributions under the Reorganized Debtors' plan.

GFCC continues to assert one of the seven remaining claims subject to a TIA objection. GFCC's Claim No. 43010 for unliquidated damages was subject to the TIA Objection, but on January 16, 2006, GFCC filed Claim No. 44909, a copy of which is attached as Exhibit B, amending the prior-filed claim to allege liquidated TIA damages, together with post-petition attorneys' fees and expenses of $96,206,880.22.

GFCC's argument, articulated in its Response filed December 7, 2005 [Docket No. 13814] and Sur-Reply filed December 23, 2005 [Docket No. 14195] in connection with Claim No. 43010, is that United is required to make a lump sum payment to GFCC under the relevant TIAs sufficient to ensure that GFCC received the "Net Economic Return"[4] on its investment. Response, ¶ 6. In advancing this argument, GFCC is unwilling to acknowledge three critical points. First, the indemnity payments under the TIAs are only designed to compensate for the "Loss" of tax benefits as defined in the TIAs. Second, GFCC must offset its claim by tax savings achieved in future years. Finally, the gross up amounts should be limited to the actual income recognized as a result of the Loss and which will actually be reflected on GFCC's tax returns. Aside from the fact that New York law applies to the GFCC TIAs, GFCC has provided nothing new under the sun: nothing in GFCC's documents or arguments distinguish GFCC's position from that of any other TIA Objection Respondent. The GFCC TIAs, like many other of the TIAs subject to the TIA Objection, require United upon the occurrence of a "Loss," to make a lump sum payment that is calculated to preserve the owner

---

[4] "Net Economic Return means an Owner Participant's anticipated after-tax yield, including aggregate after-tax cash flows.

10957750_2.DOC

participant's Net Economic Return, <u>which return includes any adjustments for the owner participant's tax savings in future years</u>. In fact, what United said in its Omnibus Reply in support of Omnibus Objection to TIA Claims filed December 14, 2005 [Docket No. 14001] (the "Reply") applies again here: that those several TIAs which contain Net Economic Return language -- including GFCC's -- allow for adjustment for future tax savings regardless of whether or not United as Lessee is in default thereunder. Accordingly, United incorporates herein by reference all of the TIA claim reduction arguments it has made to date in the TIA Objection and the Reply.

## III.

## **ARGUMENT**

**A.     United Is Entitled to Reduce the Amended TIA Claim by the Present Value of GFCC's Future Tax Savings**.

In its Response, GFCC creates a misleading impression of how Section 5(b) of the TIAs (the "Indemnity Clause") is supposed to work in three key respects. First, in paragraph 23 of its Response GFCC fails to quote the entirety of that Clause (Section 5)[5] which <u>expressly provides that the lump sum payment for indemnification must take into account future tax savings reasonably expected to result from the Loss</u>:

> SECTION 5.   <u>Indemnity for Loss of Assumed Tax Benefits</u>.
>
> (b)     <u>Indemnity</u>.  The amount payable by reason of any Loss shall be a lump sum amount which, on an After-Tax Basis, shall causes the Owner Participant's Net Economic Return to be maintained after taking into account the sum of the following amounts payable by the Owner Participant with respect to such Loss: (A) <u>the additional Federal and State income tax payable as a result of such Loss</u>, and (B) any interest, additions to tax or penalties associated with such Federal income tax (adjusted to reflect any current deductions available with respect to

---

[5]    One of the GFCC TIAs is attached as Exhibit A to the GFCC Response.

4

> such interest, additions to tax and penalties) (the sum of (A) and (B) referred to as the "Before-Tax Amount"). [Emphasis Added]
>
> The calculation of such lump sum amount shall: (A) except as otherwise provided in this Agreement or as required by reason of the Loss, <u>be made in accordance with the assumptions of Section 2 hereof, including without limitation the assumed tax rates set forth in Sections 2(n) and (o) hereof</u>, (B) take into account the future Loss or Losses expected, in the reasonable opinion of Owner Participant's Counsel, to occur as a result of the Loss or the circumstances giving rise thereto, and (C) <u>take into account any Tax Savings reasonably expected to be available to the Owner Participant as a result of the Loss or future Loss or Losses expected</u> . . . [Emphasis Added]

GFCC simply ignores Section 5(b)'s requirement that any lump sum payment must be offset by Tax Savings and indeed, incorrectly asserts in paragraph 24 of its Response that no such offset is contractually required when it plainly is. GFCC's "Losses"[6] consist of adverse tax consequences due to taxable income which all becomes due in the year of foreclosure <u>minus the future tax savings realized from foreclosure</u>.

As we have stated before, even if the TIA language itself did not so provide which it does, the rule -- which applies with equal force under both New York and Illinois law -- is that the amount of compensatory damages is generally equal to (1) the net amount of the losses caused by the breach *plus* (2) the gains prevented because of the breach *minus* (3) the savings made due to the breach. Thus, damages = losses caused + gains prevented - savings made. New York law requires the court to take "into consideration the cost . . . avoided as a result of not having to complete the contract . . . ." <u>Al-Ev Constr. Corp. v. Ahern Maint. & Supply Corp.</u>, 529

---

[6] The "Loss" that has occurred here has resulted from an acceleration of anticipated income. If the Lease had its course GFCC would have included every dollar of the principal balance of the debt in GFCC's income over the remaining Lease term. This is contrary to GFCC's characterization that the Loss is wholly "unanticipated income," thereby triggering additional tax consequences under Section 2(f) which provides for the definition of "Inclusion Event" which this Loss is not. It is merely the timing of the income recognition that was unanticipated. Further, Section 2(f) specifies "provided, however, that an "Inclusion Event" shall not include a recapture of MACRS Deductions," and GFCC's income recognition from the foreclosure will be a recapture of its previously claimed MACRS Deductions.

5

N.Y.S.2d 354, 356 (N.Y. App. Div. 1988); <u>Stone v. Continental Airlines</u>, 804 N.Y.S.2d 652, 658 (N.Y. Civ. Ct. 2005); <u>see</u> also <u>Liberty Navigation & Trading Co. v. Kinoshita & Co.</u>, 285 F.2d 343, 346 (2nd Cir. 1960) ("what must be deducted is any saving to the plaintiff due to the nonperformance of the contract") (internal quotes omitted); <u>Indu Craft, Inc., v. Bank of Baroda</u>, 47 F.3d 490, 495 (2nd Cir. 1995) ("revenues due a plaintiff because of a breached contract must be offset by any amount plaintiff saved as a result of the breach").

Also, under New York law the "Loss" GFCC has suffered is analogous to lost profits in a breach of contract case, in which any damage award must be reduced by costs <u>avoided</u> by the injured party by virtue of the breach. <u>See</u> <u>Martin Motor Sales, Inc.</u>, 452 F. Supp. 1047, *18 (2nd Cir. 1978) (again, the same principles regarding lost profits apply under New York law). In short, whether under TIA Section 5(b) or applicable law, GFCC must offset its Losses by the tax savings it enjoyed in the three years since the filing of United's bankruptcy petition, together with all future tax savings.

Second, GFCC further mischaracterizes the lump sum payment to be made under Section 5(b) by using the Indemnity Clause as a back door means to recoup its free cash and residual, namely, recovery of the entirety of its original equity investment. In doing so, GFCC deliberately attempts to confuse and entangle the concepts of Net Economic Return and Tax Savings. GFCC would like to recast the indemnity as a guarantee of its "Net Economic Return." However, recoupment of all of the cash flows emanating from GFCC's original equity investment is **not** the purpose of the TIAs: their purpose is to make GFCC whole for the taxes it must pay as a result of its Loss, on a net present value basis. Section 5(b) quoted above clearly references that the amounts being indemnified are the taxes related to the Loss. GFCC attempts to conjure up a guaranty of its "Net Economic Return" out of a simple reference to this term.

10957750_2.DOC

The Indemnity Clause is a snapshot at this moment in time when GFCC is including in income the amount relating to the foreclosure. GFCC's loss of its free cash and residual are not "Losses" for TIA purposes and should not be covered by the TIA Indemnity Clauses.

This is why Section 5(b) states that the lump sum payment is to be made on an After-Tax Basis to preserve Net Economic Return _after_ taking into account the additional Federal and State income tax payable as a result of such Loss. The manner in which Section 5(b) is drafted has nothing to do with entitlement to future free cash and residual value which GFCC is trying to claw back by reference to Net Economic Return and after-tax cash flows. Response, ¶¶ 22-25.[7]

**B.  United's Computation of the Tax Gross-Up Is Tied to GFCC's Actual Damages and Therefore Appropriate.**

GFCC also objects to the manner in which United has calculated GFCC's gross-up claims, believing that it is entitled to gross up its claims on a hypothetical whole dollar basis. Response, ¶¶ 26-34. Once again, GFCC's discussion of the gross-up calculations needlessly muddles the Net Economic Return and gross up concepts. To reiterate United's approach which is tied to GFCC's actual damages, the gross up must be based on the actual tax consequences to GFCC resulting from the fractional distribution (estimated at 5.5% under the Plan) on the base indemnity claim. Moreover, under the New York case law cited above GFCC is precluded from retaining the benefits of the tax savings GFCC would enjoy, were the gross-up on its base indemnity claim to be paid on a whole dollar basis. United's gross up arguments are laid out in at paragraphs 24 through 26 of the TIA Objection, and pages 11-13 of the Reply, and are

---

[7]  Third, GFCC is using the wrong base indemnity rate in calculating its tax indemnity claims. GFCC is using a rate of 35.65% (see e.g. Exhibit A to Claim No. 44909) instead of 34.67% as required by Section 2(o) of the TIAs. As set forth on Exhibit A hereto, United has properly calculated GFCC's claim using 34.67% pursuant to Section 2(o).

7

incorporated by reference here. If foreclosure on GFCC aircraft occurred in 2005, is it really the case that GFCC intends to claim the entire amount of its TIA claims in its 2005 tax returns on a whole dollar basis. GFCC should be required to inform the Court what GFCC plans to report on its 2005 tax return.

C.      **GFCC Is Not Entitled to Its Asserted Attorneys' Fees Claims.**

United seeks to disallow the Attorneys Fee Claims asserted by GFCC in full. See, e.g., In re Loewen Group Int'l, Inc., 274 B.R. 427, 474 (Bankr. D. Del. 2002) ("post-petition fees and costs may only be recovered by creditors to the extent their claims are oversecured").

## RESERVATION OF RIGHTS

Nothing contained herein shall constitute a waiver of the Debtors' right to object to the Amended TIA Claim, Claim No., 43010, 44910, Claim No. 39455 or any other claim asserted by GFCC on any grounds not set forth in this Objection. The Debtors hereby reserve the right to object concurrently or in the future to any claims referenced in this Objection on any grounds and to amend, modify and/or supplement this Objection. Separate notice and hearing will be scheduled for any such objection.

## RESPONSES TO OBJECTION

A.      **Parties Opposing Relief**

Claimant or any other party wishing to oppose the relief requested in this Objection must file a written response with the Clerk of the Bankruptcy Court at 219 South Dearborn Street, Room 710, Chicago, Illinois, 60604, and serve a copy of the response upon (a) counsel for the Reorganized Debtors, Kirkland & Ellis LLP, 200 East Randolph Drive, Suite 6500, Chicago, Illinois 60601 (Attn: Marc Kieselstein, Rebecca Fruchtman, and Erik Chalut); (b) counsel for the Official Committee of Unsecured Creditors, Sonnenschein, Nath & Rosenthal LLP, 8000 Sears Tower, Chicago, Illinois 60606 (Attn: Fruman Jacobson and Patrick Maxcy)

and Sonnenschein, Nath & Rosenthal, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Carole Neville); and (c) the Office of the United States Trustee, 227 West Monroe, Suite 3350, Chicago, Illinois 60606 (Attn: Kathryn M. Gleason) *so as to be received* on or before 4:30 p.m. prevailing Central time on March 8, 2006.  Only those responses timely filed with the Court and received by the above in accordance with the Notice of Filing served contemporaneously herewith (the "Notice") will be considered by the Court.  If Claimant does not want the Court to reduce, modify, or eliminate a claim, Claimant must comply with the instructions in the Notice.

**B.     Any Response Filed with the Court Should Contain at a Minimum the Following:**

1. A caption setting forth the name of the Court, the name of the Reorganized Debtor, the case number and the title of this Objection;

2. The name of Claimant and a description of the basis for the amount of the claim;

3. The specific factual basis and supporting legal argument upon which Claimant will rely in opposing this Objection;

4. Any supporting documentation, to the extent it was not included with the proof of claim previously submitted to the Reorganized Debtors' notice and claims agent, Poorman-Douglas, upon which Claimant will rely to support the basis for and amounts asserted in its proof of claim;

5. The address to which the Reorganized Debtors must serve any reply to the response; and

6. The name, address, and telephone number of the person (Claimant or Claimant's legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve this Objection on behalf of Claimant.

10957750_2.DOC

If a response is properly and timely filed in accordance with the above procedures, and the Reorganized Debtors are unable to reach a consensual resolution with Claimant, the Reorganized Debtors will request that the Court conduct a hearing and rule on the Reorganized Debtors' Objection.

If Claimant fails to file and serve a timely response in compliance with the foregoing procedures, the relief requested herein may be granted without further notice to Claimant.

**C.      Replies to Responses**

The Reorganized Debtors seek leave to, at their option, file a reply to Claimant's response so that it is received by Claimant's counsel no later than 2:00 p.m. prevailing central time two days prior to any hearing on the Objection.

**D.      Notice**

Pursuant to Section C.5 of the Third Amended Notice, Case Management and Administrative Procedures [Docket No. 8388] (the "Case Management Procedures") approved in these Chapter 11 cases, notice of this Objection has been provided to: (a) the Core Group (as defined in the Case Management Procedures); (b) the 2002 Notice List; and (c) counsel for Walt Disney Pictures and Television. In light of the nature of the relief requested, United submits that no further notice is required. In addition, any party may obtain a copy of the Objection by requesting the same from Poorman-Douglas at (877) 752-5527, at the web site of the United States Bankruptcy Court, Northern District of Illinois at http://www.ilnb.uscourts.gov (home page) or www.ilnb.uscourts.gov/chapter11/0248191.htm (the Mega Case section) or by logging onto the Debtors' private website at http://www.pd-ual.com.

The Reorganized Debtors' notice and claims agent, Poorman-Douglas, has served a copy of this Objection upon the Claimant that has filed Claims that are affected.

10

10957750_2.DOC

The Reorganized Debtors submit that notice of this Objection is sufficient under Federal Rule of Bankruptcy Procedure 3007 and that no further notice is necessary.

## IV.

## CONCLUSION

In light of the foregoing, the Reorganized Debtors respectfully request that the Court grant the relief requested in this Objection, and grant such other and further relief as is just and proper.

Dated: Chicago, Illinois  
        February 15, 2006

**UAL CORPORATION, et al.**

Respectfully submitted,

   /s/ Rebecca O. Fruchtman  
James H.M. Sprayregen, P.C. (ARDC No. 6190206)  
Marc Kieselstein, P.C.  (ARDC No. 6199255)  
David R. Seligman (ARDC No. 6238064)  
Rebecca O. Fruchtman, Esq. (ARDC No. 6271206)  
KIRKLAND & ELLIS LLP  
200 East Randolph Drive  
Chicago, Illinois 60601  
(312) 861-2000 (telephone)  
(312) 861-2200 (facsimile)

Counsel for the Reorganized Debtors

10957750_2.DOC