## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **UAL CORPORATION, et al.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| **Reorganized Debtors.** | ) | |
| | ) | **Honorable Eugene R. Wedoff** |
| | ) | |
| | ) | **Hearing Date:  May 19, 2006** |
| | ) | **[Status Only]** |
| | ) | |

## SUPPLEMENTAL REPLY IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO GFCC AMENDED AIRCRAFT AND TAX INDEMNITY CLAIM NO. 44909[RELATES TO DOCKET NOS. [ 13441, 13814, 14001, 14195, 14200, 15223, 15641 & 15692]]

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "United") file their Supplemental Reply in support of the Reorganized Debtors' Objection (the "Objection")[1] [Docket No. 15223] to GFCC Amended Aircraft and Tax Indemnity Claim No. 44909 (the "Amended TIA Claim") to address two questions raised by this Court at the April 28, 2006 hearing in connection with the Objection.

---

[1]   Terms used and not otherwise defined herein shall have the meaning ascribed to them in the Objection or in the GFCC operative documents.

# I.

## PRELIMINARY STATEMENT

GFCC continues to try to offset its economic losses against United's legitimate credit for Tax Savings.[2]  Yet the TIA is strictly an obligation to indemnify GFCC for taxes due and not an economic guaranty.

The GFCC leveraged lease transactions originally contemplated that GFCC would reap tax benefits during the early portion of the Lease and repay substantially all of those tax benefits during the later portion of the Lease.  These tax benefits (including receipt, repayment and the timing thereof) were a component of GFCC's Net Economic Return, which was GFCC's anticipated after-tax yield, including aggregate after-tax cash flows, over the life of the transactions.  United's TIA obligation, under certain circumstances, to indemnify for the loss, or change in timing of, those tax benefits was part of GFCC's Net Economic Return.  This is why the phrase "shall cause the Owner Participant's Net Economic Return to be maintained" appeared in Section 5(b) of the TIA.

However, the TIA is not a guaranty of GFCC's overall Net Economic Return. The reference to "Net Economic Return" in the TIA is to provide a framework within which the tax indemnity must be calculated, but "Net Economic Return" does not provide an independent recovery for GFCC's full economic loss (only the tax portion thereof).  At the April 28 hearing, GFCC's own counsel highlighted the point that "Net Economic Return" provides a framework and point of departure for tax indemnity calculations:

---

[2]   GFCC continues to argue that its "net economic return be maintained under the tax indemnity agreement." 4/28/06 Transcript, p.21, lines 3-10.

> MR ABBOTT:  Because the net economic return is based upon
> original assumptions made in the transaction that assumed certain
> cash flows at certain points in time and certain tax consequences as
> well.  If the tax consequences change, an indemnity is owing, but it
> is based upon the hypothetical cash flows that were originally
> priced.  Id.  Page 24, lines 12 – 17.

Fast-forward to the default and foreclosure scenario that unfolded here, the outcome of which results in no continuing overall viability for the phrase "Net Economic Return" in Section 5(b).  <u>Given the default, GFCC's assignment of most of its Net Economic Return to the Mortgagee has divested GFCC of any ability to assert any rights whatsoever in connection with Net Economic Return</u>.  GFCC even derives a benefit from losing these rights: now, GFCC does not have to pay future taxes on the stream of payments as originally contemplated by the TIA (including the free cash component of its Net Economic Return) which assumed the transactions would run to term with no default.  To the extent related to the scheduled future debt service payments, these are the Tax Savings for which United seeks a present value credit.[3]

## II.

## <u>SUMMARY OF ISSUES RAISED BY THE COURT AND UNITED'S RESPONSE</u>

At the April 28, 2006 hearing on United's Objection, this Court asked the parties to address two issues which go to the heart of why GFCC has no right to claim an offset to Tax Savings based on loss of Net Economic Return:

- (1) If GFCC had hypothetically assigned to a third party all or a portion of its right to receive rent streams under the Lease in a no-default scenario, wouldn't that assignment result in a commensurate reduction in GFCC's Net Economic Return?

---

[3]    Note that United is not seeking a Tax Savings credit for the Tax Savings on the free cash payments GFCC is not going to receive.

- (2) Didn't GFCC have the ability to step in and cure United's default, and then assert a claim for damages in United's bankruptcy case?

The answer is an emphatic "yes" to both questions.  <u>First</u>, with the appropriate consents under the operative documents, GFCC could have directed the Lessor to assign to a third party GFCC's entire right to anticipated Net Economic Return, which assignment would have divested GFCC of any right to receive Net Economic Return.  This result is no different than what <u>actually</u> happened under the GFCC operative documents:  GFCC assigned its Net Economic Return to State Street Bank and Trust Co. as Mortgagee to secure the Mortgage.  This assignment cut off all GFCC's rights in connection with Net Economic Return in the default/anticipated foreclosure scenario that ultimately transpired.  Therefore the phrase "shall cause the Owner Participant's Net Economic Return to be maintained" in Section 5(b) of the TIA can only be read as requiring consistency with the original assumptions and not as an independent indemnity for GFCC's entire Net Economic Return.  In view of the Owner Trustee's pledge and assignment of Net Economic Return to the Mortgagee, GFCC was divested of the ability to assert this right altogether upon United's default.

<u>Second</u>, GFCC does have cure rights under the operative documents.  Upon United's default under the Lease, GFCC had the right to either purchase the debt under the Trust Indenture or cause the Owner Trust to pay it off.  In addition, GFCC has the right to make up to six rent cure payments on United's behalf in order to avoid an event of default under the Trust Indenture.

4

## III.

## <u>ARGUMENT</u>

**A.  Hypothetical Third Party Assignment of Net Economic Return in No-Default Scenario Is Equivalent to Mortgagee Assignment in Default Scenario.**

With the appropriate consents from the parties, in a no-default scenario GFCC could have assigned all, or any portion of, its rights to receive Net Economic Return to an approved third party through appropriate instruction to the Owner Trustee/Lessor.  These are the Lease payments to which the Owner Trustee is entitled in excess of the amounts necessary to pay amounts due under the Trust Indenture.  Nowhere in any of the operative documents is there any prohibition on GFCC's right to assign collection of this payment stream to an approved third party.  <u>See</u> Trust Indenture, § 10.9, to which the Owner Trustee is a party:  "All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, each of the parties hereto and the permitted successors and assigns of each . . ."; and Lease, § 3 "Lessee shal1 pay (or cause to be paid) promptly to Lessor, or to whomever shall be entitled thereto, any and all Supplemental Rent . . ."  <u>See also</u> Lease, at § 13.[4]  At the April 28, 2006 hearing, GFCC conceded as much.  4/28/06 Transcript, p.19, line 9.

---

[4]    Section 13 of the Lease provides in relevant part:

"Lessor agrees that it will not assign or convey its right, title and interest in and to this Lease or the Aircraft <u>except as provided in the Operative Documents</u>.  [Emph. Added]  Subject to the foregoing, the terms and provisions of this Lease shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and permitted assigns."

It is not clear that this clause even applies, if all that Lessor would be assigning under the Lease is the right to receive Rent in excess of the amounts required to service the debt under the Trust Indenture.  If the clause does apply, the Lessor is entitled to assign the Lease "as provided in the Operative Documents."  Further, this clause certainly contemplates that Lessor may have "permitted assigns."

Pursuant to Section 9(k) of the Participation Agreement GFCC would be permitted to assign its rights in the Owner Trust upon satisfaction of the conditions contained in Section 9(k).

GFCC's Net Economic Return is reduced by that portion assigned away to a third

party.  As the Court noted at the April 28 hearing:

> THE COURT:   Well, the point that I'm trying to get at is because of the
> assignment in my hypothetical, your net economic benefit is reduced.  You have
> given away part of the net economic benefit and so you don't get that.

Id., at p. 20, lines 9-13.

The "Term and Rent" provisions of the Lease make clear that United as Lessee

has just one obligation to make Rent payments under the Lease.  Lease, § 3.  In fact, as United

has argued on countless occasions, the operative documents are drafted so that the Lessee should

never have to make payment on the same obligation twice, e.g.:

- Lease, § 15.  "Upon occurrence of any Event of Default under the Lease, United is liable,
  without duplication of amounts payable under this provision, for all unpaid Rent . . ."

- TIA, § 6(c).  Equity does not have any direct indemnity claim in circumstances in which the
  Mortgagee recovers stipulated loss value.

- TIA, § 8.  Recomputation and adjustment to SLV Schedule (pre-default) if United
  indemnifies the Owner Participant for any Loss under the TIA.

Therefore, in a no-default scenario, if GFCC assigned away 50% of its Net

Economic Return, United would only obligated to pay 50% of the Net Economic Return cash

stream to GFCC, with the 50% balance payable to GFCC's assignee.  If GFCC assigned away its

entire Net Economic Return, then United would have no obligation to pay GFCC anything.

There is no difference in result between the hypothetical third party assignment of

GFCC's entire Net Economic Return and what actually happened here.  In both cases GFCC

assigned its entire Net Economic Return to another party, and lost all of its rights to receive

anything in connection with Net Economic Return.  Pursuant to the Granting Clause of the Trust

Indenture, the Owner Trustee at the direction of GFCC assigned the Lease, including all Rent[5]

thereunder, to the Mortgagee to secure repayment of the Mortgage.[6]  Trust Indenture, Granting

Clause, § 2.  Upon United's default, GFCC's rights with respect to Net Economic Return were

cut off, and the Mortgagee was vested with the sole power to pursue remedies and enforce claims

in connection with Net Economic Return to the exclusion of GFCC and the Owner Trustee.

Trust Indenture, § 4.4.  <u>Therefore, GFCC has now been divested of all rights to assert a claim of</u>

<u>any kind in connection with Net Economic Return, including any claim to offset loss of Net</u>

<u>Economic Return against the Tax Savings it has achieved as a result of the timing of foreclosure.</u>

**B.      GFCC Has Cure Rights under the Trust Indenture**

Section 2.14 of the Trust Indenture gives GFCC certain rights to purchase the

Loan Certificates in a United default scenario.[7]  Also, GFCC had the ability to provide the

Owner Trust with funds to repay the debt under the Trust Indenture (it is, after all, the Owner

Trust's debt).  GFCC could have exercised either of these options and thereby regained complete

control over its Net Economic Return destiny.  GFCC choose not to do so.

In addition, Section 4.3(x) of the Trust Indenture provides GFCC with

opportunity to cure up to six Lease payment defaults by Lessee.  If GFCC had exercised those

---

[5]   Rent includes all Net Economic Return cash flows.  Although under the Trust Indenture there is a carve-out for "Excluded Payments," these are limited to general indemnities owed under the Participation Agreement and tax indemnities owed under the Tax Indemnity Agreement.

[6]   Under Section 20 of the Lease, United as Lessee accepts and consents to this assignment and agrees to pay all amounts of Rent (other than Excluded Payments) directly to the Mortgagee prior to the discharge of the Trust Indenture.  Lease, § 20.

[7] GFCC did just that in 16 similar transactions involving leveraged leases of 757 aircraft.  GFCC purchased the senior loan certificates and took control of its own destiny.

7

rights, it could have indeed made a claim in United's bankruptcy case for those cure payments made on United's behalf.

## IV.

## CONCLUSION

In light of the foregoing, the Reorganized Debtors respectfully request that the Court grant the relief requested in the Objection, and grant such other and further relief as is just and proper.

Dated: Chicago, Illinois
        May 5, 2006

**UAL CORPORATION, et al.**

Respectfully submitted,

     /s/ Rebecca O. Fruchtman
James H.M. Sprayregen, P.C. (ARDC No. 6190206)
Marc Kieselstein, P.C.  (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Rebecca O. Fruchtman, Esq. (ARDC No. 6271206)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Counsel for the Reorganized Debtors

Supplemental Reply in support of GFCC Objection.DOC