**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION, et al.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Reorganized Debtors.** | ) | **Honorable Eugene R. Wedoff** |
| | ) | |
| | ) | **Hearing Date:  June 8, 2006** |
| | ) | **Hearing Time:  10:00 a.m.** |

**REPLY OF REORGANIZED DEBTORS TO SUPPLEMENTAL BRIEF OF GFCC
REGARDING THE REORGANIZED DEBTORS' OBJECTION TO GFCC AMENDED
AIRCRAFT AND TAX INDEMNITY CLAIM NO. 44909 [RELATES TO DOCKET
NOS. 13441, 13814, 14001, 14195, 14200, 15223, 15641, 15692 & 16012]**

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "United") file this Reply to GFCC's Supplemental Brief (the "GFCC Supplemental Brief") Regarding the Reorganized Debtors' Objection (the "Objection")[1] [Docket No. 15223] to GFCC Amended Aircraft and Tax Indemnity Claim No. 44909 at this Court's invitation to address arguments raised by GFCC for the first time in its Supplemental Brief.

**I**

**SUMMARY OF UNITED'S REPLY TO GFCC SUPPLEMENTAL BRIEF**

GFCC continues to portray the TIAs as vehicles to assert offset claims for losses of GFCC's future free cash rentals, thereby distorting and inappropriately expanding the true purpose of the TIAs which is solely to indemnify GFCC for taxes due.  In a new spin on an old theme, GFCC offers up a contrived, confusing and inaccurate discussion of what collateral was pledged and assigned to the Mortgagee to secure the debt repayment and what Stipulated Loss

---

[1] Terms used and not otherwise defined herein shall have the meaning ascribed to them in the Objection or in the GFCC operative documents.

Value/Termination Value ("SLV/TV") adjustments would occur in the event of a tax Loss, <u>failing to point out that these adjustments would only occur if the Leases were continuing in a no-default scenario</u>.

This Reply will show that GFCC misinterprets how SLV/TV is to be adjusted under Section 8 — discussed at length in the GFCC Supplemental Brief — of the TIA in a no-default scenario, that Section 3 of the Lease has no direct relationship to a Loss under the TIA, and significantly, that SLV/TV <u>does not get adjusted at all</u> under Section 8 of the TIAs in a default/foreclosure scenario.  This is because the Owner Trustee assigned the entire equity piece of Net Economic Return to the Mortgagee to secure United's performance under the transaction. <u>This equity piece includes all "Rent," which is defined in the Lease to include SLV/TV</u>.  Upon United's default, GFCC was stripped of any right to assert an equity claim of any kind in connection with Net Economic Return, including any claim which would seek to adjust or re-calibrate SLV/TV.  That equity piece of Net Economic Return was pledged and assigned to the Mortgagee to use and apply in an Indenture Event of Default situation in the Mortgagee's sole discretion.  Thus, contrary to what the GFCC Supplemental Brief says, the assignment to the Mortgagee is in no way limited to the "debt balance floor amount" of the Rent stream.

Section 8 of the TIAs is not designed to apply in a total meltdown situation:  its purpose is to appropriately provide for an adjustment to SLV/TV in the event GFCC suffers an indemnifiable Loss sometime during the life of the transactions while the Leases are continuing and remain in full force and effect.  GFCC obfuscates this important distinction between default and no-default scenarios by deliberately muddying the waters on the manner in which the Operative Documents are supposed to work under each separate and distinct scenario.

Finally, GFCC misrepresents United's position on how the gross up on the GFCC TIA claim should be calculated, arguing that United's formula violates the principle espoused by this Court that the key to resolving GFCC's TIA claim in bankruptcy is to understand how the claim would be computed outside of bankruptcy. This is untrue. United's formula is based on the fact that, as a matter of black letter contract law, GFCC is only entitled to collect its consequential damages for breach and is derived from the express provisions of the TIAs that gross up indemnification payments be made on the basis of actual tax liability. Therefore United's formula is entirely en sync with this principle articulated by the Court at the April 28, 2006 omnibus hearing.

## II

## **ARGUMENT**

A.  **The Basic Structure of the Transactions Shows That GFCC Is Grossly Distorting the Concept of SLV/TV Adjustments.**

The starting point for exposing the distortions and inaccuracies set forth in the GFCC Supplement Brief is to retrace the mechanics of the pledge and assignment of SLV/TV to the Mortgagee and to revisit the definition of "Net Economic Return" which provides in relevant part:

> "Net Economic Return" means the Owner Participant's net after-tax book yield, aggregate after-tax cash flow and no less than 100% book income for each year prior to the fifth anniversary of the Closing Date, and book income shall not be increased or decreased by more than 10% for each subsequent year of the Lease Term…

Lease, ¶ 1.

In the context of SLV/TV, the concept of Net Economic Return is reflected by the equity portion of SLV/TV (i.e., the portion of the SLV/TV) in excess of the principal amount of the debt), which factors in GFCC's future rental stream and residual value. Tracking through the

3

Lease definitions and relevant Trust Indenture provisions, the entire SLV/TV (including the equity portion of SLV/TV), is pledged and assigned by the Owner Trustee to the Mortgagee as part of Supplemental Rent to secure the Owner Trustee's performance under the Trust Indenture.[2]  Accordingly, GFCC has been divested of any right to assert any claim arising under the Lease (as related to its Net Economic Return) as a set off against its Tax Savings under the TIAs in view of the default situation that exists here.

Also included in Net Economic Return and SLV/TV are the tax consequences of the sale-leaseback transactions.  Any tax indemnification obligations which United had in connection with the tax consequences are subject to the tax indemnity carve out set forth in the Order Approving Settlement and Term Sheets with Trustees and Controlling Holders for Public Debt Aircraft dated September 27, 2005  (the "Debt Settlement") and therefore remain obligations of United to GFCC under the TIAs.

**B.  The Mechanics of Adjustment of SLV/TV in a Non-Default Scenario under Section 8 of the TIAs and Section 3(i) of the Leases:  GFCC Has Mis-Stated How These Adjustments Work.**

As this Court has stated, United agrees that the key to resolving these issues is to understand how GFCC's claim would be computed outside of the bankruptcy context.  4/28/06 Transcript, p.14. lines 10-16.[3]  Here is how the Operative Documents are supposed to work, in the event GFCC suffers a Loss but there is no default and the Leases remain in full force and effect.

---

[2] Lease, ¶ 1, definition of "Supplemental Rent," is defined to include payments of SLV/TV.  Trust Indenture, Granting Clause, ¶ 2.

[3] While GFCC also ostensibly agrees with this principle, it fails to engage in any cogent analysis in support: instead, GFCC embarks on a misleading and incorrect discussion of SLV/TV adjustments required by Section 8 of the TIA in order to reach its desired result.  GFCC Supplemental Brief, ¶ 10.

The starting point in the no-default analysis is an "Operative Event" which triggers GFCC's loss of tax benefits under TIA Section 5(a)(i)) but is not an Event of Default under the Lease.[4] An example of a non-default Operative Event is if United as Lessee were to cause the depreciation schedule to be modified in a manner resulting in a Loss to GFCC.[5] The Loss would in turn trigger a lump sum indemnity payment by United under Section 5(b) of the TIA which pursuant to Section 5(b) (and Section 5(c), if Tax Savings is recognized by GFCC as a result) would be calculated in a manner to preserve GFCC's Net Economic Return under the continuing Lease. As conceded by GFCC, the Rents scheduled to be paid in the future would not change, and therefore, for purposes of computing the lump sum tax indemnity under Section 5, all future Rents would be assumed to be paid as scheduled pursuant to the original Lease terms. (At the April 28, 2006 omnibus hearing, GFCC's counsel admitted that the calculation under Section 5(b) would be made within the constraints of the original pricing assumptions used in calculating Net Economic Return.) Id, p.24, lines 12-17.

In the event United actually[6] makes a lump sum indemnity payment under Section 5(b) and (c), Section 8 of the TIA provides that SLV/TV percentages must be recomputed to reflect the Loss in accordance with the manner in which such values were originally computed,

---

[4] The term "Operative Event" is a method of allocating risk and responsibility for Loss of Tax Benefits. Some Operative Events may also be Events of Default under the Lease but many are not. Operative Event is defined in Section 1(i) of the TIA.

[5] Another example of a non-default Operative Event is overt action by United that causes the Internal Revenue Service to treat GFCC as if GFCC had sold the aircraft to United for an amount equal to the debt balance. United would pay the indemnity amount but the Lease and related documents would not terminate and United would continue to make payments thereunder.

[6] Note that adjustments under Section 8 of the TIA are only mandated where an amount "… is actually so paid." The analysis is paragraphs 5 through 9 of the GFCC Supplemental Brief proceeds as if the SLV adjustment is made merely because the Owner Participant has a claim.

or adjusted pursuant to Section 3 of the Lease.[7] GFCC argues that adjustments made under Section 8 eliminate the Court's concern that United is being hit with an equity claim twice — first, for delinquent Rent due under the Lease which is a proxy for SLV/TV and second, as offset against Tax Savings in the calculation of the indemnity owed under the TIA — because the Rent claim under the Lease will be appropriately reduced under TIA Section 8 to take into account the claim of GFCC under the TIA. GFCC Supplemental Brief, ¶¶ 2-6.

GFCC's purported solution to the duplication issue does not work because GFCC inaccurately portrays how adjustments under Section 8 are supposed to be made. The double-counting problem is by no means eliminated by the adjustment of SLV/TV under Section 8, as claimed by GFCC.

In the first place, SLV/TV are not proxies for Rent upon default, contrary to what GFCC says.[8] However, even if they were, recomputing the SLV/TV amounts under Section 8 after making an indemnity payment in a no-default scenario <u>does not</u> result in a commensurate reduction of future Rents due under the Lease. Section 8 of the TIA <u>only</u> refers to adjustment of

---

[7] Section 8 of the TIA provides:

> SECTION 8. <u>Adjustment of Stipulated Loss Value and Termination Value</u>. If any amount is required to be paid hereunder by the Lessee with respect to a Loss and is actually so paid, the Owner Participant shall cause the Lessor to recompute Stipulated Loss Value and Termination Value percentages with respect to the Aircraft to reflect such Loss in accordance with the manner in which such values were originally computed, or adjusted pursuant to Section 3 of the Lease, by the Owner Participant, and shall certify to the Lessee either that such percentages as set forth in the Lease do not require change or, as the case may be, the new values necessary to reflect the foregoing recomputation, describing in reasonable detail the basis for computing such new percentages, and upon such certification such new percentages shall be substituted for the percentages appearing in the Lease. In no event shall Stipulated Loss Value or Termination Value as recomputed for any period be less than the principal amount, premium, if any, and accrued interest on the Loan Certificates. Any recomputation under this Section 8 shall not take into account any Tax Law Changes.

[8] GFCC's assertion that SLV and TV are both "proxies" (impliedly the same as) Rents in a default scenario is incorrect. GFCC Supplemental Brief, ¶ 1. SLV/TV under the Operative Documents are broader and more all-encompassing than the Rents, going beyond just a future rental stream to include the equity piece in excess of the principal balance of the debt which excess preserves GFCC's Net Economic Return (including the residual value, together with the tax piece which factors in tax consequences of early termination and receipt of payments on the equity piece).

6

SLV/TV: no adjustment to Rent is required or permitted thereunder or elsewhere in the Operative Documents as a result of a Loss. This is proof certain that any Rent claim under the Lease cannot be "appropriately reduced" by a claim made under the TIA as GFCC would have this Court believe. Therefore GFCC should not be able to recover its lost future cash flows as part of a TIA indemnity claim in a no-default scenario since a lump sum TIA indemnity payment <u>does not</u> result in any adjustment/reduction to future Rents under the continuing Lease. Unless future Rents are also adjusted, under GFCC's theory in a no-default scenario, United would be paying twice on Net Economic Return, first, through the lump sum indemnity under Section 5 of the TIA, and then again through future Rent payments under the Lease. This cannot be.

Also, contrary to GFCC's statement that Section 3(c)(i) of the Lease provides that all adjustments related to a Loss under Section 8 of the TIA must be made consistent with maintaining GFCC's Net Economic Return,[9] there is no cause and effect relationship between a tax Loss under the TIA and Section 3(c)(i) of the Lease. Section 3(c)(i) is limited to four discrete changed circumstances requiring that the original economics of the deal, namely SLV/TV, be adjusted, e.g., if Transaction Expenses are other than 1.25% of Lessor's Cost, or the Closing Date occurs other than on December 2, 1992, none of which constitute an "Operative Event" under the TIA.[10] <u>See</u> Lease, ¶ 3(c)(i) and TIA, ¶ 1(i). None of these four circumstances

---

[9] GFCC Supplemental Brief, ¶ 4.

[10] Section 3(c)(i) of the Lease provides in relevant part:

   SECTION 3. <u>Term and Rent</u>.

          * * * * * * * * * *

    (c) <u>Adjustments to Basic Rent, Excess Amount, Stipulated Loss Values, Termination Values and Special Termination Values</u>.

(Continued…)

trigger a tax Loss so the reference to preservation of the Owner Participant's Net Economic Return in Section 3(c)(i) of the Lease has very limited relevance to adjustments to SLV/TV for a tax Loss under Section 5(b) of the TIA.[11]

### C.  SLV/TV Do Not Get Adjusted under Section 8 of the TIA in a Default Scenario.

The Mortgagee took an assignment of Supplemental Rent, which included SLV/TV, to secure United's performance under the sale-leaseback transaction. Contrary to GFCC's assertion — which assertion could not be any more far-fetched and incorrect — that all that was assigned to the Mortgagee was the "debt floor balance amount" along with a security interest in the Aircraft,[12] the Trust Indenture plainly contemplates an assignment of GFCC's entire economic interest in the transaction via the assignment to the Mortgagee of all rights in, and under, the Lease, including all Supplemental Rent thereunder. Trust Indenture, Granting Clause. The purpose of that equity assignment was, of course, to provide the debt with

---

(i)  In the event that (A) Transaction Expenses paid by Lessor are determined to be other than 1.25% of Lessor's Cost, (B) there shall be an optional redemption or a refinancing or a refunding of the Loan Certificates in accordance with Section 18 of the Participation Agreement, (C) the Closing Date occurs other than on December 2, 1992, or (D) there is an optimization in accordance with Section 19 of the Participation Agreement, then in each case the Basic Rent and Excess Amount set forth in Exhibit B, Stipulated Loss Value percentages set forth in Exhibit C, the Termination Value percentages set forth in Exhibit D and the Special Termination Value percentages set forth in Exhibit H shall be adjusted (upwards or downwards as the case may be) using the same methods and assumptions (as modified on account of the occurrence of any of the events referred to in clauses (A) - (D)) used to calculate Basic Rent and Excess Amount, Stipulated Loss Value percentages, Termination Value percentages and Special Termination Value percentages as set forth in Exhibits B, C, D and H, respectively, in each case in order to: (1) maintain the Owner Participant's Net Economic Return and (2) minimize the Net Present Value of Rents to Lessee to the extent possible consistent with clause (1) hereof. Any adjustment pursuant to this Section 3(c)(i) shall be made as soon as practicable after the occurrence of the event giving rise to such adjustment.

[11] The sole reason that Section 8 of the TIA cross-references Section 3 of the Lease is that the SLV/TV values as originally computed may have been subsequently adjusted prior to the occurrence of the tax Loss due to one or more of the four circumstances outlined in Section 3(c)(i). These adjustments made under Section 3(c)(i) would replace and supersede the original SLV/TV computation as the new benchmark for recomputation of those values after a Loss under Section 8 of the TIA occurs.

[12] GFCC Supplemental Brief, ¶ 7.

8

additional collateral to collect and apply to reduce outstanding debt balances owed in a default/insolvency situation. That Section 8 of the TIA and Section 3(c)(iv) of the Lease contain language that prevents an SLV/TV adjustment under Section 8 from reducing those recomputed values below the outstanding debt balances is entirely irrelevant to what has been assigned to the Mortgagee. The "debt balance floor" language appearing in Section 8 of the TIA and Section 3(c)(iv) of the Lease was intended to ensure that the Certificate Holders' outstanding debt balances could be paid in full, at any point during the life of the transaction. That language placed no restriction on — and is entirely irrelevant to — what has and has not been assigned to the Mortgagee.

Upon United's default, all of the Owner Trustee's rights (and therefore GFCC's rights as the beneficial owner) with respect to the equity portion of SLV/TV were cut off, and the Mortgagee was vested with the sole power to pursue remedies and enforce claims to the exclusion of GFCC and the Owner Trustee pursuant to Section 4.4 of the Trust Indenture. Since the Owner Trustee had assigned all of the SLV (including the portion which would have preserved GFCC's Net Economic Return) to the Mortgagee, upon United's default GFCC was stripped of any right to assert an equity claim of any kind in connection with Net Economic Return. It is clear that GFCC would like to "cut out the middle man" in the transaction (namely, the Owner Trustee) by ignoring the fact that the SLV/TV claim was assigned by the Owner Trustee, not GFCC, to the Mortgagee. GFCC is trying to offset, in the TIA context, a claim which not only has been assigned to the Mortgagee and settled, but a claim which is not GFCC's to assert in the first place.

The Debt Settlement which carves out GFCC's TIA claims is not based on SLV/TV. As a result of the Debt Settlement, the Owner Trustee and GFCC received nothing

9

with respect to the collateral. GFCC could have avoided this result by paying off the debt in full and regaining control of its destiny, but chose not to do so. Since United and the debt did not settle the claims on a basis that referenced SLV, Section 6(c) of the TIA did not bar GFCC's TIA recovery.[13] Although GFCC's TIA recovery is not barred, that recovery is limited to the indemnification for taxes due as a result of early termination and cannot and should not include a set-off claim for GFCC's full economic loss under the Lease, which claim has already been squeezed out pursuant to the Debt Settlement. That equity claim — which was never intended to be encompassed within United's TIA obligations in a default scenario — was assigned to the Mortgagee and is now gone.

Yet GFCC argues that an adjustment under Section 8 of the TIA due to a tax Loss magically strips the Mortgagee of the assignment of all of the Lease claims it holds (including for SLV/TV in a default scenario). GFCC's idea that, in a post-default scenario, the Mortgagee would allow its assigned claim for SLV under the Lease to be automatically reduced by the Owner Participant's TIA claim is not supported by the Operative Documents. In fact, the Owner Trustee agreed in Section 9.1(a) of the Trust Indenture that it will not (with certain limited exceptions not applicable here) enter into amendments to the Lease without the consent of the Mortgagee (acting at the direction of the Certificate Holders). Post default and with foreclosure imminent, the Certificate Holders would have no economic reason to allow the SLV to be retroactively reduced in their detriment under Section 8 of the TIA. Therefore, in a default scenario as here, Section 8 has no teeth because the Mortgagee would never allow the Lessor to make any retroactive adjustments of SLV/TV under that provision.

---

[13] As United has argued on numerous occasions, had the Mortgagee filed a claim in United's bankruptcy case based on SLV/TV or entered into a settlement agreement with United on that basis, Section 6(c) would have eliminated United's TIA obligation to GFCC entirely since the TIA claim is duplicated within the SLV amount.

10

**D.      GFCC Misstates United's Position on Calculation of the Gross Up.**

The GFCC Supplemental Brief mischaracterizes United's position on how the "gross up" portion of the TIA claim should be calculated.  In paragraph 10, GFCC argues that the manner in which United seeks to reduce the gross up claim flies in the face of this Court's statement that the key to resolving GFCC's TIA claim in bankruptcy is to understand how the claim would be computed outside of bankruptcy.

United strongly disagrees: its formula is entirely consistent with this overriding principle because the formula is grounded in (i) general contract rules governing consequential damages; and (ii) the express contractual language of the TIAs which require gross up indemnification only on actual tax liability as may be modified by the assumed tax rate embedded in the TIA at Section 1(a), second sentence.  See TIA, ¶ 1(a) Definition of "After Tax Basis" ("amounts required to be paid" are those amounts that would be reported on state and federal tax returns); TIA ¶ 5(b) (on an After-Tax Basis, the amount payable by reason of any Loss must take into account the additional Federal and State income tax payable as a result of such Loss"); TIA ¶ 5(d) (detailed reporting requirements on Owner Participant as to what taxes actually have to be paid to the taxing authorities arising from the Loss)  Therefore, according to the very terms of the TIAs — interpreted outside of the bankruptcy context — the gross up must be based on the actual tax consequences to GFCC, as unsecured creditor, resulting from the fractional distribution it will receive on the base indemnity claim.

## III

## CONCLUSION

In light of the foregoing, the Reorganized Debtors respectfully request that the Court grant the relief requested in the Objection, and grant such other and further relief as is just and proper.

Dated: May 22, 2006

        **UAL CORPORATION, et al.**

        Respectfully submitted,

          /s/ Rebecca O. Fruchtman

        James H.M. Sprayregen, P.C. (ARDC No. 6190206)
        Marc Kieselstein, P.C.  (ARDC No. 6199255)
        David R. Seligman (ARDC No. 6238064)
        Rebecca O. Fruchtman, Esq. (ARDC No. 6271206)
        KIRKLAND & ELLIS LLP
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000 (telephone)
        (312) 861-2200 (facsimile)

        Counsel for the Reorganized Debtors