# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-48191 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: February 5, 2014 at 9:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **February 5, 2014 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in the courtroom usually occupied by him, Courtroom 744, in the United States Bankruptcy Court, 219 South Dearborn, Chicago, Illinois 60604, or before any judge who may be sitting in his place or stead, and shall then and there present the **Motion of John Doe Plaintiffs to Reopen Chapter 11 Cases of UAL Corporation, et al. for the Limited Purpose of Bringing Late-Filed Claims to the Extent of Insurance Coverage**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: January 31, 2014

                                                        **JOHN DOE PLAINTIFFS**

                                                        By: /s/ Jordan M. Litwin
                                                              One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

Lyndsay A. Markley (ARDC No. 6286794)
Thomas Fedick (ARDC No. 3125050)
HARMAN, FEDICK & MARKLEY, LTD.
222 North LaSalle Street, Suite 430
Chicago, IL 60601
(312) 263-6452

{34231: 001: 01297954.DOC :2 }

# CERTIFICATE OF SERVICE

I, Jordan M. Litwin, an attorney, certify that on January 31, 2014, I caused copies of the attached **Notice of Motion** and **Motion of John Doe Plaintiffs to Reopen Chapter 11 Cases of UAL Corporation, et al. for the Limited Purpose of Bringing Late-Filed Claims to the Extent of Insurance Coverage** to be served via electronic notice on the parties appearing in the Court's CM/ECF system and via electronic mail and overnight mail upon the parties listed below as noted:

Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
Attn: Michael B. Slade & Sienna R. Singer
michael.slade@kirkland.com
sienna.singer@kirkland.com

Office of the United States Trustee, Region 11
219 S. Dearborn Street, Suite 873
Chicago, IL 60604
ustpregion11.es.ecf@usdoj.gov


By: /s/ Jordan M. Litwin

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-48191 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: February 5, 2014 at 9:30 a.m. |

**MOTION OF JOHN DOE PLAINTIFFS TO REOPEN CHAPTER 11 CASES OF UAL CORPORATION, ET AL. FOR THE LIMITED PURPOSE OF BRINGING LATE-FILED CLAIMS TO THE EXTENT OF INSURANCE COVERAGE**

John Doe 1, John Doe 2, John Doe 3, John Doe 4 and John Doe 5, each an individual (collectively, the "Movants")[1], by their undersigned counsel, and pursuant to section 350(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully move (the "Motion") the Court to reopen the above-captioned jointly administered chapter 11 bankruptcy cases of UAL Corporation, United Air Lines, Inc. and their affiliated debtors (together, the "Debtors"). In support of this Motion, the Movants state as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 105(a) and 350(b) of the Bankruptcy Code.

---

[1] Movants names are currently being withheld due to the extremely sensitive nature of this matter, as set forth further below, but can be made available to the Court and the Debtor under seal.

{34231: 001: 01297954.DOC :2 }            1

## INTRODUCTION

1. In this Motion, Movants seek very limited relief – the reopening of these bankruptcy cases to pursue certain personal injury actions against one of the Debtors, United Air Lines, Inc. (d/b/a United Airlines) ("United Airlines"), solely to the extent of its insurance coverage. The underlying personal injury action arises out of sexual abuse that occurred to the Movants while they were participants in the United Airlines Believer's Program (the "Believer's Program") as minors. Movants were unable to pursue their claims until recently for a variety of reasons. Movants suffered denial that these sexual abuses occurred and mistaken belief that they were complicit. Movants further failed until recently to understand that their abuses may give rise to a civil claim against United Airlines, that United Airlines filed bankruptcy or that the bankruptcy cases could impact their ability to pursue a claim.

2. In their bankruptcy cases, the Debtors failed to provide any notice of filing, the claims bar date or any other court filings to any of the known or potential victims associated with the Believer's Program, including the Movants. Consequently, the Movants cannot be bound by the confirmed plan and injunctions in these cases and should be permitted to pursue their claims irrespective of the closure of these cases. Granting this Motion does not disturb the finality of these bankruptcy cases and in no way prejudices the Debtors. In contrast, failure to grant this Motion would result in a grave injustice and an inequitable result to the Movants. Further, it would reward United Airlines for its failure to comply with even the most basic requirements of notice to known claimants in connection with these bankruptcy cases.

## BACKGROUND

3. In 1994, United Airlines selected certain members of the Fourth Grade Class at a Chicago Public School to participate in a charitable venture, the United Airlines Believer's

{34231: 001: 01297954.DOC :2 }                                    2

Program.  According to United Airlines' press releases, the goal of the Believer's Program was to assist inner-city, high-risk youths achieve higher education through a combined approach of monetary assistance (college scholarships) and long-term mentorship by United Airlines employees.  In exchange for promising student participants scholarships to a college of their choosing, students signed a contract requiring them to participate in certain activities, including a daily after-school study program.  Movants each recall participating in a two-hour afterschool program four to five days per week as well as participating in a number of different United Airlines press events.

4. In 1994, each Movant was a member of the Fourth Grade Class chosen by United Airlines and a participant in the Believer's Program.  All of the Movants fit the targeted demographics of the program. John Does 1, 2, 4 and 5 were all nine-year-old black males from an impoverished, single parent, female-led household with no male role models and John Doe 3 was a nine-year-old black male living in a family with an income below the poverty level.  All of the boys had a very low statistical likelihood of graduating high school, let alone attending college.

5. United Airlines appointed Marvin Lovett ("<u>Lovett</u>") as the Director of the Believer's Program – a position in which he supervised and interacted with the boy participants on a daily basis.  On information and belief, United Airlines did not conduct any investigation into Lovett before it placed him in control of the minor participants. Lovett lived two houses down from the elementary school and at the time of the program's inception, he lived with a boy in his early teens with whom he was rumored to be having a sexual relationship.  Lovett was also known to allow boys to come to his home to drink alcohol and smoke marijuana.

6. United Airlines proudly and publicly sponsored the Believer's Program. For example, all of the program participants, including, Lovett, wore blue windbreakers prominently featuring United Airlines' name and logo in the corporation's colors. In addition, participants were given blue pencils, backpacks, binders and other items featuring the United Airlines' name and logo. John Doe 4 recalls creating a piece of art at Shedd Aquarium during a Believer's Program field trip. The artwork was displayed with the participants' names along with the United Airlines logo and the names of officers of United Airlines.

7. Movants all believed that Lovett was an employee of United Airlines and that he possessed the sole authority to determine their eligibility for college scholarships. Movants recall that a United Airlines employee, Arlene Sweeney, met regularly with Lovett in his office and also addressed the financial concerns of the participant's parents. Movants recall that another United Airlines employee, "Nina," was present approximately twice a month for the after-school program. All of the Movants recall meeting United Airlines' then-Chairman and Chief Executive Officer Gerald Greenwald, and his wife Glenda, both at the school and at promotional events.

8. During the first year of the Believer's Program, Lovett asked John Doe 1 to come to his house where Lovett showed him pornographic movies, gave him alcohol and then masturbated him. Lovett threatened John Doe 1 that if he told anyone about the abuse he would be removed from the Believer's Program. Believing that Lovett could take away his scholarship, John Doe 1 remained silent and the abuse continued for years. At Lovett's command, John Doe 1 was forced to participate in a range of sexual activities, including receiving and giving oral and anal sex. In addition to the threat of removal from the Believer's Program, Lovett gave John

Doe 1 much-needed new clothing and money. In addition, he provided John Doe 1 with marijuana and alcohol.

9. The experiences of John Does 2, 3, 4 and 5 are very similar to those describe above. All Movants recall Lovett regularly asking them to stay late after the program concluded for the day or go to Lovett's home; these requests were made on several occasions in front of Nina and/or Sweeney. Movants also recall: pornography strewn about Lovett's home, a video camera in his shower (which Lovett encouraged the boys to bath in), and an artificial vagina in the shower that Lovett also encouraged Movants to use. In short, Lovett engaged in egregious acts of sexual abuse with all of the movants for years.

10. In 2000, one of the victims of Lovett's sexual abuse shot and killed him. During the investigation into the murder, the police discovered 140 videotapes depicting Lovett sexually abusing minors, including the Movants. The Movants were all interrogated by police as suspects in the murder. Until shown a videotape proving otherwise, most of the Movants denied that Lovett had sexually abused them. The interrogations were the first time that the Movants learned that the acts of abuse perpetrated on them were recorded. The trauma of the sexual abuse was compounded by the media's initial portrayal of the sexual abuse as consensual "relationships" between the victims and Lovett and their treatment during the murder investigation as criminals.

11. On information and belief, following Lovett's murder, United Airlines closed down the Believer's Program at the elementary school where Movant's attended and transferred it to a new location when the program was reopened in 2001. Despite all that had transpired, United Airlines never contacted any of the Movants or their families.

12. On December 9, 2002 (the "<u>Petition Date</u>"), United Airlines, together with its parent UAL Corporation and 26 affiliated debtors, filed a voluntary petition under Chapter 11 of

the Bankruptcy Code. The Court set May 12, 2003 as the deadline for filing claims in these cases against the Debtors (the "Bar Date"). *See* Dkt. No. 14813. On January 20, 2006, the Court entered an order (the "Confirmation Order") [Dkt. No. 14829] confirming the Debtors' Second Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") [Dkt. No. 14813] and a final decree on December 8, 2009 (together with the two subsequent final decrees entered in these cases as set forth below, the "Final Decree") [Dkt. No. 17425]. The Court has reopened these bankruptcy cases twice on August 17, 2011 and August 21, 2012 [Dkt. Nos. 17449 & 17476] and closed the cases for the second and third time on October 27, 2011 and December 14, 2012 [Dkt. Nos. 17469 & 17479], respectively. Indeed, the Debtors themselves have made requests to this Court for the reopening of these cases for limited purposes no less limited than the relief sought herein.

13. None of the Movants received notice of the filing of the bankruptcy cases, the Bar Date or any other filings despite the fact that reasonable diligence by the Debtors would have revealed that the Movants and other members of the Believer's Program had or might have a claim in these bankruptcy cases. Some of the Movants were never aware that United Airlines filed bankruptcy and those that were aware did not understand the implication a bankruptcy filing would have on an outstanding claim.

14. All of the Movants blocked the memories of the sexual abuse for years. In June of 2012 John Doe 1 heard a news story about the Penn State/Jerry Sandusky criminal trial and the related civil cases brought by the survivors of sexual abuse. After years of silently believing that he must somehow be to blame for the sexual abuse, John Doe 1, for the first time, realized that he may have a civil claim against United Airlines. Soon thereafter, John Doe 1 contacted the law office of Harman, Fedick & Markley, Ltd. and discussed his potential claim with

attorney Lyndsay A. Markley. John Doe 1 signed an attorney-client agreement with Harman, Fedick & Markley on June 26, 2012.

15. After retaining counsel, John Doe 1 reached out to the other Movants through their families and mutual friends. Until John Doe 1 reached out to the other Movants, none of them were aware that they might have a remedy under civil law for the sexual abuse perpetrated on them during their participation in the Believer's Program. John Doe 2 signed an attorney-client agreement on November 20, 2013. John Does 3, 4 and 5 signed attorney-client agreements in January of 2014.

16. In an effort to fully investigate this matter, Harman, Fedick & Markley ordered the entire criminal file related to Lovett in June of 2012 but experienced substantial delays and was not able to obtain the necessary files in their entirety until March of 2013. Shortly thereafter, counsel for Movants contacted the successor entities to the Debtors (the "Reorganized Debtors") regarding Movants' claims.[2] Counsel for the Reorganized Debtors requested that counsel for the Movants refrain from any court filings until they had the opportunity to investigate the allegations and engage in settlement negotiations. On September 27, 2013, United Airlines in-house counsel, Richard Fiore, United Airlines outside trial counsel, Michael Freeborn, and an insurance adjustor for a policy covering the Debtors met with counsel for the Movants. At this initial meeting, all parties referenced above agreed to mediation. The mediation relative to the claims of John Doe 1 took place on December 6, 2013 before Judge Donald O'Connell. At the mediation, the Reorganized Debtors made a settlement proposal. The mediation concluded without a settlement being reached.

---

[2] At the time, Movants' counsel only represented John Doe 1.

**LEGAL ANALYSIS & ARGUMENT**

17. Movants seek to reopen these bankruptcy cases for the limited purpose of bringing a claim for liability against certain of the Debtors solely as a predicate for recovery against insurers. The relief sought herein will in no way disturb the finality achieved by the Confirmation Order and Final Decree as to the Debtors, creditors who received any treatment under the confirmed Plan, or otherwise.

18. Section 350(b) of the Bankruptcy Code provides that a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or *for other cause*." 11 U.S.C. § 350(b) (emphasis added). What constitutes "other cause" under section 350(b) of the Bankruptcy Code is within the discretion of the bankruptcy court. *In re Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010); *Matter of Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993); *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991). Courts have consistently held that in exercising its discretion to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *In re Stark*, 717 F.2d 322, 323 (7th Cir. 1983). Bankruptcy judges have broad discretion "to weigh the equitable factors in each case." *Id.*

19. Courts have found that a debtor suffers little prejudice by the reopening of a case where the movant sees only a declaration of liability that can serve as a predicate for recovery against insurers. *See*, *e.g.*, *In re Shondel*, 950 F.2d at 1304.

20. In considering the timeliness of a motion to reopen, courts consider any lack of diligence on the moving party and any prejudice caused to the nonmoving party by the delay. *See*, *e.g.*, *Redmond v. Fifth Third Bank*, 624 F.3d at 799 ("In assessing whether a motion [to

reopen] is timely, courts may consider the lack of diligence of the party seeking to reopen and the prejudice to the nonmoving party caused by the delay").

21. Although a creditor's claim can be barred for untimeliness upon a showing that it received reasonable notice, a party cannot be barred from bringing a claim where that party received no notice that its claim would be barred. *In re Pettibone Corp.*, 151 B.R. 166, 172 (Bankr. N.D. Ill. 1993) (citing *New York v. New York, New Haven & Hartford R.R.*, 344 U.S. 293, 297 (1953)). A debtor is required to undertake "reasonably diligent efforts to uncover the identities of creditors." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) (internal quotation marks omitted). Other forms of notice can suffice in certain circumstances, such as notice by publication, but only after a debtor has first undertaken reasonably diligent efforts to provide direct notice. *Id.*

22. In the present case, the Movants were deprived of their rights to notice in the bankruptcy cases even though the Debtors knew, or at minimum should have known, that Movants and other victims in the United Airlines Believer's Program may have claims against certain of the Debtors. Movants were all reasonably ascertainable creditors and, therefore, should have received actual notice. *See*, *e.g.*, *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 974 F.2d 775, 788 (7th Cir. 1992); *In re Envirodyne Indus., Inc.*, 206 B.R. 468, 473 (Bankr. N.D. Ill. 1997). This fact alone warrants the granting of this Motion under the circumstances and a finding that the Movants are not bound by the Plan or any injunctions contained therein. Nonetheless, the Movants also meet *every* standard that courts consider in evaluating whether to reopen a case under section 350 of the Bankruptcy Code, as set forth in more detail below.

23. Further, Movants have not sat on their rights. The delay here is understandable, reasonable and unavoidable. Movants are uneducated, unsophisticated victims of sexual abuse

from as early as nine years of age. Until June of 2012 or later, none of the Movants understood that they had a possible civil claim against any of the Debtors. Upon this realization, Movants engaged counsel and counsel immediately began investigating the extent and viability of such claims as quickly as possible under the circumstances. Thereafter, any delay stems from counsel for Movants complying with direct requests from counsel for the Reorganized Debtors that Movants refrain from any court filings so as to allow a review of the file, mediation and settlement discussions. No delay is attributable to any lack of diligence by any of the Movants.

24. The Debtors are not prejudiced in the reopening of these bankruptcy cases. In fact, these cases were reopened twice for limited purposes at the request of the Debtors without harm to the finality of these cases, including as recently as December 14, 2012.

25. Additionally, public policy weighs heavily in favor of this Court granting this Motion and reopening these bankruptcy cases for the limited purpose of permitting these Movants to move forward against certain of the Debtors solely to the extent of insurance coverage and to finally receive justice and closure. Civil claims arising out of sexual abuse are not subject to a standard statute of limitations in the State of Illinois. Movants should be allowed to bring their claims, especially given that the Debtor failed to engage in any reasonable diligence. Allowing the Debtors or, more relevantly, their insurers, to hide behind the injunctions in the Plan and/or the closure of these bankruptcy cases is unreasonable and would result in substantial injustice to the Movants. Public policy requires that Movants be permitted to pursue actions in state court (or any court of competent jurisdiction) against the Debtors solely to the extent of insurance proceeds.

## **CONCLUSION**

26. In this Motion, the Movants have shown that just cause exists to reopen the bankruptcy cases for the limited purpose of pursuing a previously unknown claim against certain Debtors solely to the extent of insurance coverage. This Court is granted broad discretion to reopen cases where the equities justify doing so. It is difficult to imagine a context more worthy than the facts here.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, Movants request that the Court (i) enter an order reopening the above-captioned jointly administered cases for the limited purpose set forth herein, (ii) permitting Movants to pursue their claims against any of the Debtors in state court or any other court of competent jurisdiction solely to the extent of insurance proceeds, and (iii) grant such other and further relief as may be just and proper.

Dated this 31st day of January, 2014.

                                        Respectfully submitted,

                                        JOHN DOE PLAINTIFFS

                          By:    /s/ Forrest B. Lammiman
                                          One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

Lyndsay A. Markley (ARDC No. 6286794)
Thomas Fedick (ARDC No. 3125050)
HARMAN, FEDICK & MARKLEY, LTD.
222 North LaSalle Street, Suite 430
Chicago, IL 60601
(312) 263-6452